# Piccirilli Bros. v. Lewis, Auditor General, and Snyder, State Treasurer, Appellants.

*Public officers—Administrative Code—Auditor general—State
treasurer—Attorney general—Private counsel—Constitutional law
—Act of June 7, 1923, P. L. 498—Mandamus—Appropriations—
Meade memorial.*

1. Where, by the Administrative Code of June 7, 1923, P. L.
498, a department, board or commission is abolished, and its rights,
powers, duties and obligations are transferred to another, then
created, all appropriations to the former, for a specific purpose,
are necessarily transferred to the latter, which may proceed with
the work referred to in such appropriating acts and requisition for
its payment, although the appropriation was not made directly to
the new department, board or commission, or formally transferred
to it by the legislature.

2. An appropriation may be transferred from one department,
board, commission or officer to another, in such a way as the legis-
lature deems best.

3. Legislative methods, when not controlled by constitutional
provisions, may be altered by the legislature at any time.

4. The prior practice of a department, board, commission or
officer must be changed, when necessary so to do in order to comply
with the provisions of valid statutes.

5. Where the auditor general refuses to examine and settle an
account against the State, both he and the state treasurer may be
joined as defendants in a petition for a mandamus to compel action
upon the claim, though it had never been presented to the state
treasurer for his consideration.

6. Where a proceeding is required to be under the control of the
attorney general, private counsel cannot properly appear of record
without the consent of that officer.

7. Departments, boards, commissions and officers of the State may, at their own expense, employ private counsel to present their views to the court, but such counsel cannot appear of record for such departments, boards, commissions or officers, without the consent of the attorney general.

Argued January 5, 1925. Appeal, No. 11, May T., 1925, by defendants, from order of C. P. Dauphin Co., Commonwealth Docket 1924, No. 63, awarding peremptory mandamus, in case of Getulio Piccirilli et al., trading as Piccirilli Bros., v. Samuel W. Lewis, Auditor General, and Charles A. Snyder, State Treasurer. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, SADLER and SCHAFFER, JJ. Affirmed.

Petition for writ of peremptory mandamus. Before HARGEST, P. J.

The opinion of the Supreme Court states the facts.
Mandamus awarded. Defendants appealed.

*Errors assigned* were, inter alia, (1) order awarding mandamus, quoting it, and (2) order striking from the record appearance of private counsel for defendants.

*Geo. Ross Hull,* of *Snyder, Miller & Hull,* with him *Henry C. Niles,* for appellants.—In the absence of any specific act of transfer or reappropriation, we think it clear that the unexpended balances of these appropriations fell or lapsed into the general fund of the state treasury, and that there is now no appropriation made by law upon which the auditor general may draw his warrant.

There is a further reason why the general language of the administrative code should not be construed so as to transfer or reappropriate the moneys appropriated to the original Meade Memorial Commission and thus make them available for expenditure by the secretary of property and supplies. If such construction be placed upon the code then those parts of it which operate to

transfer or reappropriate money would be unconstitutional, because in contravention of article III, sections 3 and 15 of the Constitution of Pennsylvania: Com. v. Snyder, 279 Pa. 234.

Requisition by the proper commission is a prerequisite to payment of appellees' claim: Com. v. Mann, 168 Pa. 290; Com. ex rel. v. Snyder, 26 Dauphin Co. R. 294.

The obligation of a contract is the means which, at the time of its creation, the law affords for its execution and enforcement: Penrose v. Canal Co., 56 Pa. 46; Bunn v. Gorgas, 41 Pa. 441; Nelson v. St. Martin's Parish, 111 U. S. 716.

Appellants may be represented in this case by private counsel without the approval in writing of the attorney general: Com. ex rel. v. Mathues, 210 Pa. 372; Com. ex rel. v. Snyder, 279 Pa. 234; Holy Trinity Church v. U. S., 143 U. S. 457.

*Wm. A. Schnader,* Special Deputy Attorney General, with him *George W. Woodruff,* Attorney General, for appellants.—Appellants had no right to be represented in this court by private counsel without the attorney general's consent and approval: Com. v. Burrell, 7 Pa. 34; Chettham v. McCormick, 178 Pa. 186; Nebraska v. R. R., 22 Neb. 313; Gibson v. Kay, 68 Ore. 589; Orton v. State, 12 Wis. 509; People v. Pacheco, 29 Calif. 210; People v. Navarre, 22 Mich. 1; Babcock v. Hanselman, 56 Mich. 27; Mundy v. McDonald, 216 Mich. 444; Withee v. Fisheries Co., 120 Me. 121; People v. Stephens, 52 N. Y. 306.

*Paxson Deeter,* of *Bell, Kendrick, Trinkle & Deeter,* with him *Harry D. Jones,* for appellees.—The appropriations are available for payment of plaintiff's claim. The secretary of property and supplies has authority to draw a requisition for the payment of the Piccirilli claim.

The Appropriation Act of 1921 is modified by the code: Searight's Est., 163 Pa. 210; Garrett v. Turner, 235 Pa. 383.

Under the Act of 1811, payment may be secured without a requisition.

OPINION BY MR. JUSTICE SIMPSON, February 2, 1925:

In their appeal from the judgment in this mandamus suit the auditor general and state treasurer alleged the court below committed three errors: (1) in striking from the record the appearance of private counsel for them; (2) in dismissing the state treasurer's application to quash the alternative mandamus, so far as he was concerned, because it was not alleged he had been guilty of any neglect of duty; and (3) in awarding a peremptory mandamus directing the auditor general to examine, adjust, settle and enter upon his books, the claim of plaintiffs, and, if "found correct and the plaintiffs entitled to the said money ($13,387.20), to draw his warrant upon the state treasurer for the amount of said claim," as well as directing the latter "to examine said claim and settlement thereof, and, if approved by him, to pay the said warrant when so issued."

The judgment just quoted raises the main question in the case, and the relevant facts regarding it are as follows: The legislature created the Meade Memorial Commission of the Commonwealth of Pennsylvania, charged with the duty of erecting a memorial statue to General George Gordon Meade. Several appropriations were made for the purpose, inter alia, of constructing the statue, without making them to the commission by name, but the final one (App. Acts 1921, page 275) was "to the Meade Memorial Commission......for the purpose of constructing the necessary foundation and pedestal, in securing appropriate tablets and designs therefor, and for the erection, completion and dedication of said statue or memorial." The commission duly contracted with plaintiffs to construct the pedestal, base

and platform; they performed the work, became and still are entitled to be paid for it in some form of proceeding, and there is an ample fund, appropriated and on hand, to pay them. Pending the completion of the work, however, the Administrative Code of June 7, 1923, P. L. 498, was passed. By it the commission was abolished, but it expressly stated that the work should go on, and did not give the slightest hint that it was intended the appropriations should lapse, or should not be available for the payment of the work when completed. On the contrary, it provided (section 2101) that "the department of property and supplies [then created] shall exercise the powers and perform the duties heretofore exercised and performed" by the commission, and (section 3) that "all rights, powers, and duties, which have heretofore been vested in, exercised by, or imposed upon any......commission......abolished by this act......and which are by this act transferred, either in whole or in part, to a department, board, or commission created by this act, shall be vested in, exercised by and imposed upon the department, board, or commission to which the same are transferred by this act, and not otherwise; and every act done in the exercise of such rights or powers and the performance of such duties shall have the same legal effect as if done by the former officer, board, commission......or department......Every person or corporation shall be subject to the same obligation and duties, and shall have the same rights arising from the exercise of such rights or powers or in the performance of such duties, as if such rights or powers had been exercised or such duties performed by the officer, board, commission......or department......designated in the respective laws which are to be administered by departments, boards, or commissions created by this act." It was further provided (section 9) that "All existing contracts and obligations of the......commissions......abolished by this act shall remain in full force and effect, and shall be per-

formed by the departments......to which the rights,
powers, duties, and obligations of such governmental
......commissions......are transferred"; and (sec-
tion 223) that "All salaries and other compensation,
payable under the provisions of this act, shall be paid
out of the state treasury upon the warrant of the audi-
tor general drawn upon the state treasurer. The audi-
tor general shall draw warrants for salaries or other
compensation upon requisition of the head of the proper
department......All warrants for the payment of sal-
aries, compensation, or other disbursements......shall
be drawn upon requisition of the head of the depart-
ment"......

From time to time, both as plaintiffs' work proceeded
and when it was completed, requisitions in their favor
were issued by the secretary of the department of prop-
erty and supplies, for the payment of the amounts due
under the contract; one of the requisitions was pre-
sented to the auditor general, who refused to settle the
account, solely because the appropriations had not been
made to that particular newly-created department, or
formally transferred by the legislature to it. It was
alleged in the return to the alternative writ, and re-
peated here, that the prior legislative practice always
had been to make appropriations to some department,
board or commission by name, though three of the four
appropriations for this work were not so made; and
also that the practice of the auditor general's depart-
ment had been not to honor requisitions drawn against
appropriations, unless signed by the proper officer of
the department, board or commission to which they had
been expressly made,—which would mean, in this case,
by the secretary of the abolished commission.

We are not concerned with the previous legislative
practice, however, if there was one (of which we have
not been advised), in cases where admittedly valid
powers and duties, including the right to carry on work
already begun and to requisition for its payment, have

been transferred from one executive department to another; since such practice is not controlled by any constitutional provision, it may be altered by the legislature whensoever desired: Com. ex rel. v. Gregg, 161 Pa. 582. The provision of article III, section 16, of the Constitution that "No money shall be paid out of the treasury, except upon appropriations made by law, and on warrant by the proper officer in pursuance thereof," relied on by appellants, does not aid them, and no other constitutional provision has any bearing on the subject. The proper officer to draw the warrant, under that section, is admittedly the auditor general himself, and the mandamus here is to compel him to perform his duty in this respect. Admittedly also, these were "appropriations made by law," and hence when the auditor general draws his warrant by virtue of the administrative code, he does it "in pursuance" of "appropriations made by law." It is for the legislature to say how, if at all, its appropriations shall be transferred from one department, board or commission to another, when a merger takes place, and no one can successfully challenge its manner of exercising such power. The broad language quoted above, whereby the rights, powers, duties and obligations of the commission were transferred to the department of property and supplies, followed by the distinct requirement that the latter shall complete the statue to General Meade, necessarily resulted in transferring to the department the appropriations which had been made to the commission, to be used by the former in carrying out the legislative purpose named in the original appropriating statutes, and to be requisitioned by the proper officer of the department, just as, but for the merger, would have been done by a similar officer of the commission.

If the prior practice in the auditor general's department has been as stated, it must be changed to conform to the altered conditions provided by the administrative code. Any other conclusion would make the auditor

general's fiat as effective as a constitutional mandate, and compel the legislature to comply with it, in matters properly within legislative control, instead of requiring the auditor general to conform to the provisions of constitutional statutes.

The objection by the state treasurer that no relief should have been granted against him, because he had not failed in the performance of any duty, is exactly the point made by his predecessor in Com. v. Powell, 249 Pa. 144, 151, and must be overruled here, as it was there, for the reason then given: "That the auditor general and state treasurer were under the circumstances properly joined as defendants cannot be seriously questioned. The purpose is to compel the performance of an official duty which requires successive but interdependent action by the two officers. Unless they are joined, the relator will have no effective writ. The principle which authorizes such joinder is thoroughly justified." It follows that the return to the alternative writ sets forth no legal reason why appellants should not proceed to examine, adjust and settle plaintiffs' account, and the state treasurer to pay it, if the money specified in the requisition is due and owing to them.

Was the court below right in striking from the record the names of private counsel for appellants? It will be noticed that the ultimate result sought is the payment, out of state funds, of moneys due to plaintiffs. Consequently the State is the real defendant, although necessarily the proceedings were taken against the state officers required to examine, adjust, settle and pay, from those moneys, whatever amount is found to be legally due to plaintiffs. Under such circumstances, no reason exists,—certainly no constitutional one is shown,—why the State should not appear therein by her own legal representative, or some one selected by him under statutory authority; and so the administrative code expressly provides. We have quoted at length, in the opinion filed herewith, in Com. ex rel. Att'y General v.

Lewis, Auditor General, [282 Pa. 306] the relevant provisions of that code, and they need not be repeated here. It suffices that section 509 makes it unlawful for any department or officer to employ an attorney to represent such department or officer "in any matter or thing relating to the public business,......without the approval in writing of the attorney general"; and section 903 (b) makes it his power and duty "to represent the Commonwealth, or any department......or officer thereof, in any litigation to which the Commonwealth or such department......or officer may be a party."

It is not claimed that the attorney general ever consented to the appointment of private counsel in this proceeding, nor is it alleged that appellants have any personal interest therein. It is only because, as they say, they are the "watchmen of the treasury," that they claim to be entitled to be represented by private counsel. But, since they are thus made by statute, as pointed out in the case last referred to, the authority that can pass the statute can repeal or modify it; hence, if we were to assume (though in fact our views are to the contrary) that the power conferred upon appellants by earlier acts of assembly would have justified them in employing private counsel in governmental matters, nevertheless, by the Administrative Code, that power is taken away in cases like the present, and hence the court below properly struck their names from its records.

Of course, appellants may, at their own expense, employ private counsel to present their views on the governmental matters with which they are particularly acquainted, or in which they are interested; and any court will be glad to receive such aid. Our Rule 61 gives that right in this court, without the necessity of applying for leave so to do. Such counsel cannot appear of record for appellants, in their official capacities in governmental matters, however, unless with the authority of the attorney general; for, if this were allowed, such counsel might discontinue or otherwise control the pro-

ceedings. We have neither the inclination nor the authority to override the legislative mandate that, in suits of the character of the one before us, only the attorney general, or his appointee, shall act for the State. True, this may result, as it does in the present instance, in the attorney general nominally representing appellants (but in reality the State) in a matter in which he has already decided the question involved against appellants' views. As already stated, this is a subject for the legislature, since all three officials are but representatives of the State, and doubtless will receive due consideration from that body if the future reveals, as this case does not, that the State needs protection from its official adviser.

In this court, the attorney general, continuing his purpose to compel obedience to the statute, filed a petition and moved that the appearance of record of private counsel for appellants in this court be stricken off; a rule to show cause was granted, an answer was filed and decision reserved until the case should be determined on the merits. What we have already said would be conclusive of this matter also, but for the desire of appellants to have us determine whether or not the court below erred in striking from its records the appearance of private counsel. It would be little short of farcical to decide that the attorney general should represent defendants on so much of their appeal as challenges the accuracy of this ruling, especially as it was made at his request. They were entitled to have the decision of the court below on that point reviewed by us, without interference from any source, and to be represented by their own counsel in obtaining it.

The rule to strike from the record the names of private counsel for appellants is discharged, and the judgment of the court below is affirmed.